NO. 07-10-00492-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 20, 2012

_____

MARCOS XAVIER LARA, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 251ST DISTRICT COURT OF POTTER COUNTY;

NO. 60,391-C; HONORABLE ANA ESTEVEZ, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant Marcos Xavier Lara appeals his conviction of two counts of aggravated sexual assault of a child[1] and concurrent prison sentences of five years. The trial court granted in part and overruled in part appellant's pre-trial motion to suppress. Through a single issue, appellant complains the trial court abused its discretion in failing to suppress his statement and other evidence derivative of an illegal entry by police of his residence. We will affirm.

---

[1] *See* Tex. Penal Code Ann. § 22.021(a)(2)(B) (West Supp. 2012).

Background

Around 8:30 on the morning of August 29, 2009, an Amarillo mother called police to report that her 13-year-old daughter, G.V., was out overnight without permission and remained missing. G.V. and her mother were acquainted with appellant, whom the mother believed was age 18 or 19.[2] G.V.'s mother told two responding police officers that G.V. might be with appellant at a nearby residence. Going to this location, officers contacted Mrs. Bray, who occupied the residence with her husband. They told her they were looking for appellant and a female runaway. Appellant is Bray's nephew and lived in a recreational vehicle parked behind her house. At the time, officers were not made aware that appellant paid the Brays rent for the RV.

Bray led officers to the RV and, without knocking, opened the unlocked door. Noticing appellant inside the RV, she stated, "There he is." One officer immediately entered and saw G.V. and appellant lying under covers in a bed. A second officer followed. One officer testified the purpose for entering the RV was to conduct a "welfare check" for G.V., as a function of police community caretaking.[3] He did not believe enough evidence existed to obtain a search warrant.

Officers soon discovered appellant was clad only in boxer shorts and G.V. wore only a bra. Appellant was placed in the back of a patrol car and, according to one of the investigating officers, was not free to leave. G.V. was also taken into custody.

_____

[2] Appellant actually was 19 at the time.

[3] In his brief appellant states that officers came to his residence investigating a runaway report which he adds "could be regarded as a community care taking function."

2

A detective was assigned responsibility for the matter. He requested the investigating officers bring appellant and G.V. to the police station. There, the detective spoke first with G.V. and then appellant. The detective also requested that officers book into evidence bedding from the bed where appellant and G.V. were found. Items of clothing may also have been collected for evidence. This was done without a search warrant or consent. The State conceded before the trial court that items taken from inside the RV were "probably suppressible" because of the absence of a warrant or consent.

Before questioning, officers gave appellant his constitutional and statutory warnings[4] from a form. Appellant indicated he understood the rights and signed the form. He agreed to waive his rights and give the detective a statement. The detective reviewed appellant's rights with him again before taking the statement. The detective wrote the statement according to the dictation of appellant. The document was signed by appellant shortly before 1:00 p.m. on August 29. The interview lasted about an hour and fifty minutes although at times the detective was out of the room. According to the detective, necessities such as use of the restroom, food, and water were not withheld from appellant.

Also during the interview, appellant signed a form authorizing police to take samples of his body hair and saliva. This, according to the detective, was for DNA

---

[4] The warnings of Code of Criminal Procedure Article 38.22 include the *Miranda* warnings plus one additional warning. *Penry v. State,* 715, 747 n.29 (Tex.Crim.App. 1995); Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a) (West 2005).

3

comparison with the results of an examination of G.V. Items taken from the RV as evidence were not used for DNA comparison.

The detective described appellant as tired and lethargic during the interview. At one point, on returning to the room following an absence, the detective found appellant lying on a couch.

Meanwhile, after speaking with the detective, G.V. was transported to the hospital for a sexual assault examination. Her mother testified that when police found G.V. she asked them to take G.V. to the hospital. The mother added that she went to the police station and then the hospital. Trial evidence included a hospital form signed by G.V.'s mother authorizing a medical forensic examination of G.V., treatment and collection of evidence.

Appellant was indicted on two counts of aggravated sexual assault, alleging two means of sexual assault. He moved to suppress tangible items seized from the RV as well as testimony relating to his arrest and his statement on the ground that officers unlawfully entered his residence without a warrant, probable cause, or consent. After the hearing on appellant's motion, the trial court ruled that the officers entered the RV in violation of appellant's Fourth Amendment rights. The court suppressed tangible evidence seized from the RV and testimony pertaining to the observations of the officers inside the RV. Separate findings of fact and conclusions of law were not filed but the court announced on the record that it found sufficient attenuation of the taint of illegality to permit admission into evidence of appellant's statement and consent to give hair and saliva samples.

4

Trial by jury of guilt or innocence followed. Testifying for the State, G.V. described having sexual intercourse with appellant in the RV on August 29. The sexual assault nurse examiner who examined G.V. testified to the forensic examination. She noted evidence of an abrasion near the hymen that in her opinion occurred within the preceding 96 hours. An exhibit containing the patient history of G.V. was read to the jury. It included G.V.'s description of her vaginal and oral intercourse with appellant between 3:00 a.m. and 5:00 a.m. on August 29. Over objection, appellant's consent to give samples and his written statement were admitted into evidence.

A forensic scientist with the Texas Department of Public Safety's crime laboratory testified concerning her analysis of vaginal swabs taken from G.V. during the sexual assault examination and the hair and saliva samples of appellant taken by police. She found spermatozoa or sperm heads on the vaginal slide made from a swab. The DNA profile obtained from the sperm fraction of the vaginal swab was consistent with a mixture of the DNA of appellant and G.V. In the opinion of the witness, appellant was the source of the major component in the DNA profile.[5] The serology reports of the forensic scientist were admitted into evidence.

The jury convicted appellant of the charged offenses and at appellant's election the court assessed punishment. This appeal followed.

---

[5] Her report found the probability of selecting an unrelated person at random who could be the source of the major component in the DNA profile to be "one in 917.4 quintillion for Caucasians, 1 in 4.444 sextillion for Blacks and one in 7.994 quintillion for Hispanics." She added, "To a reasonable degree of scientific certainty, [appellant] is the source of the major component from this DNA profile, excluding identical twins."

Analysis

Through a single issue, appellant complains the trial court abused its discretion in failing to suppress his statement and other evidence derivative of the illegal entry of the RV by police.

To require reversal, error in the admission of evidence must have caused appellant harm. Because the error asserted is constitutional, if we find error, we must reverse the trial court unless we find beyond a reasonable doubt that the error did not contribute to the verdict of conviction. Tex. R. App. P. 44.2(a). For the harm analysis, we examine the entire record in a neutral, impartial and even-handed manner. *Tijerina v. State,* 334 S.W.3d 825, 835 (Tex.App.--Amarillo 2011, pet. refused). Our consideration is not the propriety of the outcome of trial but whether the error was a contributing factor in the jury's decision; that is, whether "the error adversely affected the integrity of the process leading to the conviction." *Langham v. State,* 305 S.W.3d 568, 582 (Tex.Crim.App. 2010) (quoting *Scott v. State,* 227 S.W.3d 670, 690-91 (Tex.Crim.App. 2007)). Constitutional error may be rendered harmless if there is "overwhelming" untainted evidence supporting the conviction. *Tijerina,* 334 S.W.3d at 835 (citing *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)). If relevant, we may consider factors such as the nature of the error, the extent of its emphasis by the State, the probable collateral implications of the error, and the weight a juror probably placed on the error. *Snowden v. State,* 353 S.W.3d 815, 822 (Tex.Crim.App. 2011). But our primary concern is whether the record shows a "reasonable possibility" the error might have contributed to the conviction. *Tijerina,* 334

S.W.3d at 835 (citing *Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App. 1998)). Said another way, the harm analysis here considers whether improperly admitted evidence might have moved the jury from a state of non-persuasion to one of persuasion on the issue of appellant's guilt. *Langham,* 305 S.W.3d at 582 (quoting *Scott,* 227 S.W.3d at 690-91).

As a general rule, the "fruit of the poisonous tree" doctrine prohibits the State's use of illegally-obtained evidence. *Wong Sun v. United States,* 371 U.S. 471, 484, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Article 38.23 of the Texas Code of Criminal Procedure provides that evidence obtained by an officer or other person in violation of the Texas or U.S. Constitutions or laws is to be excluded from evidence against the accused in a criminal trial. Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005); *Zepeda v. State,* No. 07-03-0135-CR, 2004 Tex. App. Lexis 10684, at *7-8 (Tex.App.--Amarillo Nov. 30, 2004, no pet.) (mem. op., not designated for publication).

Under the attenuation doctrine, however, evidence may be admitted if the connection between the initial illegality and the means through which the evidence was secured is so attenuated as to dissipate the taint. *Hudson v. State,* 247 S.W.3d 780, 787 (Tex.App.--Amarillo 2008, no pet.). *See Johnson v. State,* 871 S.W.2d 744, 750 (Tex.Crim.App. 1994) ("the attenuation doctrine is applicable to Art. 38.23's prohibition against evidence 'obtained' in violation of the law because evidence sufficiently attenuated from the violation of the law is not considered to be 'obtained' therefrom"). A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. *Oles v. State,* 993 S.W.2d 103, 106 (Tex.Crim.App. 1999).

The nub of the State's case against appellant was the version of facts recounted by G.V., who, as noted, testified at trial. It is unclear to us whether appellant's motion to suppress extended to G.V.'s trial testimony, but to the extent it did so, we agree with the trial court's conclusion the connection between the unlawful entry into appellant's residence and the in-court testimony of the victim of the charged offense was sufficiently attenuated to permit its presentation to the jury. *See United States v. Ceccolini,* 435 U.S. 268, 280, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978) ("[t]he exclusionary rule should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support suppression of an inanimate object"); 40 George B. Dix & John M. Schmolesky, Texas Practice Series: Criminal Practice and Procedure 7:58 (3d ed. 2011) (claim the taint of illegal police conduct is attenuated is strengthened by the voluntary decision of a witness to cooperate in the investigation) (citing cases).

The Washington case of *State v. O'Bremski,* illustrates, on remarkably similar facts, our conclusion G.V.'s in-court testimony was properly considered by the jury. 70 Wash. 2d 425, 423 P.2d 530 (1967). In *O'Bremski* the parents of a 14-year-old female runaway reported her absence to police. Another juvenile then lead officers to an apartment where they pushed the door open against the expressed will of the male occupant, O'Bremski. Officers found him partially clothed. A search of the quarters located the runaway, nude but covered with a blanket. O'Bremski was charged with carnal knowledge of a girl under age fifteen. *Id.* at 531. In a motion to suppress, O'Bremski argued the police search was illegal and any evidence obtained inadmissible. The motion was denied. At trial, the only evidence of the charged offense

was the testimony of the runaway. The jury returned a guilty verdict. *Id.* O'Bremski argued on appeal the trial court erred by failing to exclude her testimony. *Id.* at 532. Disagreeing, the court noted knowledge of the runaway and her presence in the apartment was not the product of the search. Her parents asked police to find her. Another juvenile pointed officers to the apartment. Hence, her testimony was not the product of an unlawful search. *Id.* at 533.

In the present case, police searched for G.V. at Bray's residence because the child's mother reported her daughter's absence and suggested that as her possible location. Bray directed officers to the RV. Several hours after having sexual intercourse with appellant, G.V. went to the hospital at her mother's behest, who consented to a SANE examination and treatment. For trial, G.V. returned from her new home in another state and voluntarily gave extensive testimony of her sexual encounter with appellant. Her testimony was not the product of an unlawful search and was, therefore, among the evidence properly before the jury.

Beyond the testimony of the victim, other overwhelming evidence of appellant's guilt was before the jury. Other trial evidence included the report of the SANE nurse and G.V.'s patient history containing her narrative of oral and vaginal sex with appellant. The DPS written report stated the opinion of the forensic scientist matching appellant's DNA with the sperm from G.V.'s vaginal swab.

Thus even apart from the testimony of the SANE nurse, the jury had G.V.'s account of relevant events, her trial testimony, and the corroborating matching DNA evidence.

In his written statement appellant gave police, he acknowledged the two had sexual intercourse but blamed its initiation on G.V. We need not consider whether the trial court erred by failing to exclude the statement from evidence. In view of G.V.'s testimony and the scientific evidence, we agree with the prosecutor's argument to the jury that appellant's statement is the least important item of evidence supporting his guilt.

Properly before the jury was overwhelming evidence of appellant's guilt.[6] We conclude without hesitation, beyond a reasonable doubt, that any improperly admitted evidence derived from the unlawful entry did not move the jury from a state of non-persuasion to one of persuasion on the issue of appellant's guilt, and thus any trial court error did not contribute to appellant's conviction.[7] Appellant's sole issue on appeal is overruled, and the judgment of the trial court is affirmed.


James T. Campbell
Justice


Do not publish.

---

[6] All of the evidence was to the effect appellant's sexual contact with G.V. was consensual. Because of her age, of course her consent is irrelevant.

[7] Appellant does not complain, nor do we find an indication, that the asserted error had a demonstrable impact at the punishment stage of trial. *See Wall v. State,* 184 S.W.3d 730, 747 (Tex.Crim.App. 2006) (noting in some cases testimonial statements that are harmless beyond a reasonable doubt at the guilt stage may have a demonstrable impact at the punishment stage).