**MODIFY and AFFIRM; and Opinion Filed July 31, 2013.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-12-01597-CR

**MAURICE ERNEST SOKULSKI, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 1**
**Collin County, Texas**
**Trial Court Cause No. 001-87312-2011**

### OPINION

Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice Fillmore

Following the trial court's denial of his motion to suppress, Maurice Ernest Sokulski pleaded guilty to driving while intoxicated, second offense (DWI). The trial court found Sokulski guilty and sentenced him to thirty days in jail. In one issue, Sokulski asserts the trial court erred by denying his pretrial motion to suppress. We affirm the trial court's judgment.

### Background

At the hearing on Sokulski's motion to suppress, Wylie police officer Chad Hermes testified that, on October 10, 2011, Sokulski's wife called 911 and reported that Sokulski had been drinking all day and had driven away from their house. Sokulski's wife thought Sokulski had gone to a local grocery store. Hermes responded to the call, but did not find Sokulski at the grocery store.

Hermes then called Sokulski's wife, who told him that Sokulski had been drinking vodka and orange juice for the last couple of days. Sokulski's wife also told Hermes that Sokulski becomes very belligerent when he drinks alcohol and, before Sokulski left the house, he "balled up" his fist and "put it" in her face. Sokulski's wife was afraid Sokulski was going to hit her. At this point in the conversation, Hermes saw Sokulski drive into the neighborhood.

Hermes began following Sokulski.[1] Sokulski drove into the driveway leading from the alley to his house and parked under a carport attached to his garage. The garage door was open. Hermes stopped his patrol car to the left of the driveway because he did not want to block Sokulski's car. According to Hermes, Sokulski could have driven away or walked through the garage into his house.

Because Hermes was concerned there had been an incident between Sokulski and his wife involving a threat of violence, he got out of his patrol car and walked up the driveway into the carport to speak to Sokulski. Hermes admitted that Sokulski did not invite him into the carport. As Sokulski got out of his car, Hermes immediately smelled an alcoholic beverage. He also noted that Sokulski was slightly agitated and had an aggressive tone to his voice. Hermes told Sokulski that he understood there might be a problem between Sokulski and his wife. Sokulski stated he wanted to talk to his wife. Hermes indicated Sokulski was required to talk to him first and that Sokulski needed to step out into the alley. Hermes testified that, at this point, he was detaining Sokulski. Hermes performed some field sobriety tests on Sokulski, but Sokulski indicated he was physically incapable, for a number of reasons, of performing other tests. Hermes arrested Sokulski for DWI.

---

[1] The trial court viewed a recording taken by the camera in Hermes's patrol car. The recording shows Hermes following Sokulski's car, parking his patrol car beside Sokulski's driveway, and walking up the driveway into the carport. Because the patrol car was stationary, there is no video recording of Hermes's initial contact with Sokulski; but there was an audio recording of the conversation between the two men. After Hermes and Sokulski moved into the alley, the two men appear on the video recording.

Sokulski testified the carport is outside his garage and is bolted to the house. He considers it to be a second garage. He parks his car under the carport and locks the car. He also keeps lumber and bricks under the carport. There is a door to the garage and he closes the garage door at night. There is not a door to the carport, and he cannot close the carport to the public. Anybody could walk into the carport and take the lumber and bricks stored there.

Sokulski recalled that, on October 10, 2011, he was out of his car and about to take a step into the garage attached to his house, when he heard a voice behind him. Sokulski testified he did not invite Hermes into the carport and did not voluntarily go into the alley. However, according to Sokulski, Hermes was "very aggressive" toward him and he was "not going to argue with a man with a gun."

Sokulski sought to suppress all evidence resulting from his detention because he did not consent to Hermes's entry into the carport. The trial court denied the motion to suppress and made an oral finding that Hermes's detention of Sokulski began when Hermes smelled the odor of an alcoholic beverage. The trial court concluded (1) the carport was not curtilage in which a person would have a reasonable expectation of privacy, and (2) if a person had a limited expectation of privacy in that type of curtilage, the exigent circumstances in this case would override that expectation.

## Motion to Suppress

In one issue on appeal, Sokulski asserts the trial court erred by determining the "carport was not curtilage and thus not subject to warrantless searches and seizure consideration and Constitutional protections." Sokulski specifically argues that he had a reasonable expectation of privacy in the carport and, therefore, Hermes's entry into the carport without a warrant was unlawful.

*Standard of Review*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id.* We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id..*; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997)). We review mixed questions of law and fact that do not depend on credibility and demeanor as well as purely legal questions de novo. *State v. Woodward*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Guzman*, 955 S.W.2d at 89.

As a general rule, we view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Turrubiate*, 399 S.W.3d at 150.

*Analysis*

The Fourth Amendment of the United States Constitution protects persons from unreasonable searches and seizures. U.S. CONST. amend. IV. This protection hinges on whether a person has an expectation of privacy in the thing or place to be searched "that society is prepared to recognize as reasonable." *Oliver v. United States*, 466 U.S. 170, 177 (1984); *State v.*

*Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013); *see also Kothe v State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004) ("Proof of 'a reasonable expectation of privacy' is at the forefront of all Fourth Amendment claims."). When "the Government obtains information by physically intruding" on persons, houses, papers, or effects, "a 'search' within the original meaning of the Fourth Amendment" has "undoubtedly occurred." *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) (quoting *United States v. Jones*, 132 S. Ct. 945, 950–51 n. 3 (2012)).

The Fourth Amendment's protection encompasses a person's home. *Id.* The curtilage, which is the area immediately surrounding and associated with the home, warrants the same Fourth Amendment protection that attaches to the home. *Id.* at 1414–15 (citing *Oliver*, 466 U.S. at 180); *Betts*, 397 S.W.3d at 207. A particular area is included within the curtilage of a home if the homeowner had a reasonable expectation of privacy in the area. *See Bower v. State*, 769 S.W.2d 887, 896 (Tex. Crim. App. 1989) (plurality op.), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991) (quoting *Kann v. State*, 694 S.W.2d 156, 159 (Tex. App.—Dallas 1985, pet. ref'd)). In determining whether a particular area is curtilage, we consider the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by. *United States v. Dunn*, 480 U.S. 294, 301 (1987).

The protection afforded the curtilage is not unlimited. *Cooksey v. State*, 350 S.W.3d 177, 184 (Tex. App.—San Antonio 2011, no pet); *Tijerina v. State*, 334 S.W.3d 825, 833 (Tex. App.—Amarillo 2011, pet. ref'd). A law enforcement officer's entry onto the curtilage or approach to the entrances of a residence does not necessarily rise to the level of a search as contemplated by the Fourth Amendment. *Tijerina*, 334 S.W.3d at 833; *Rodgers v. State*, 162 S.W.3d 698, 709 (Tex. App.—Texarkana 2005), *aff'd*, 205 S.W.3d 525 (Tex. Crim. App. 2006).

A law enforcement officer, like any other member of the public, has the right to enter sidewalks, pathways, common entrances, and similar passageways in order to approach and knock on the front door for the purpose of contacting the occupants. *Cornealius v. State*, 900 S.W.2d 731, 733–34 (Tex. Crim. App. 1995); *Bower*, 769 S.W.2d at 897; *Tijerina*, 334 S.W.3d at 834. A law enforcement officer may also approach the residence's back door for the same purpose. *Long v. State*, 532 S.W.2d 591, 594–95 (Tex. Crim. App. 1975); *Duhig v. State*, 171 S.W.3d 631, 637–38 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (police officers may approach back of residence to contact owner as long as the area is not restricted and officer does not deviate from normal path of traffic); *Atkins v. State*, 882 S.W.2d 910, 913 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (officer's approach through back yard of house to contact owner was not a search). Because entry is impliedly authorized, there is no reasonable expectation of privacy with regard to things observed by those on the pathway to the doors of the house. *Washington v. State*, 152 S.W.3d 209, 214 (Tex. App.—Amarillo 2004, no pet.); *see also Bower*, 769 S.W.2d at 897 (concluding there is no reasonable expectation of privacy if the activity viewed by a law enforcement officer is visible from the street or the curtilage is open to the public). But, if a homeowner manifests an intention to restrict access to these pathways, such as by erecting a locked gate or posting "no trespassing" signs, there is no implied authorization to enter, and the expectation of privacy is restored. *Nored v. State*, 875 S.W.2d 392, 397 (Tex. App.—Dallas 1994, pet. ref'd); *see also Cooksey*, 350 S.W.3d at 184.

Here, the carport attached to Sokulski's garage was open to the driveway. The driveway was not enclosed and there was no gate or door that prohibited the public from entering the carport. Nothing in the record indicates that Sokulski displayed "no trespassing" signs or took any other steps indicating that he wished to prohibit people from entering the carport. On October 10, 2011, Sokulski parked his car in the carport and intended to enter his home through

the open garage door.  Hermes used the driveway to approach Sokulski to discuss Sokulski's wife's complaint.  Regardless of whether the carport was curtilage, no Fourth Amendment right was violated by Hermes when he approached the rear of the house to contact Sokulski.[2]  *See Washington*, 152 S.W.3d at 215.  We resolve Sokulski's sole issue against him

### Modification of Judgment

The State requests that we modify the judgment to reflect the correct spelling of Sokulski's name.  Sokulski's name is misspelled in the judgment.  This Court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information to do so.  *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).  Accordingly, we modify the trial court's judgment to reflect that Sokulski's last name is spelled "Sokulski."

As modified, we affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

121597F.U05

---

[2] Sokulski has not challenged the trial court's finding that he was not detained until Hermes smelled the odor of an alcoholic beverage.  *See Woodward*, 341 S.W.3d at 410–12; *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008) (recognizing police officers are free to approach a residence to ask to speak with an individual and such conduct does not constitute a seizure until officer through force or showing of authority restrains a citizen's liberty and encounter is no longer consensual); *Banda v. State*, 317 S.W.3d 903, 910 (Tex. App.—Houston [14th Dist.] 2010, no pet.)  ("Because the initial interaction between Officer Daniel and appellant was a consensual encounter, no reasonable suspicion was necessary for Officer Daniel to approach the garage and ask to speak with appellant.").



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MAURICE ERNEST SOKULSKI,
Appellant

No. 05-12-01597-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
No. 1, Collin County, Texas,
Trial Court Cause No. 001-87312-2011.
Opinion delivered by Justice Fillmore,
Justices O'Neill and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The spelling of appellant's last name in the trial court's judgment is modified to be "Sokulski."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 31ˢᵗ day of July, 2013.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE