

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-13-00403-CR

_____

MICHAEL ANGELO MEDRANO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 66,850-E; Honorable Douglas R. Woodburn, Presiding

December 30, 2014

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Following a jury trial, Appellant, Michael Angelo Medrano, was convicted of the first degree felony offense of aggravated robbery.[1]  A jury assessed his sentence at twelve years confinement.[2]  The judgment entered contained an affirmative finding of the use of a deadly weapon.  By two issues Appellant contends (1) the trial court erred

---

[1] TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011).  An offense under this section is a first degree felony.  *Id.* at § 29.03(b).

[2] The *Judgment* incorrectly states that the trial court assessed sentence.

by not suppressing all identification evidence following an impermissibly suggestive photo lineup and (2) the evidence presented was legally insufficient to sustain the deadly weapon element of the offense. We affirm.

BACKGROUND

On March 9, 2013, Tonya Brown was sitting in her car in the drive-through line at a Sonic restaurant, waiting for her order with her window rolled down, when a car pulled up behind her without stopping to order. A man exited that car, approached her with a handgun (even touching the barrel of the gun to her shoulder) and demanded that she give him her wallet. When Tonya asked him if he was serious, he pulled back the slide on the gun, as if to load it, and again demanded her wallet. When Tonya starting honking the horn of her car, the would-be robber made a quick exit, which was witnessed by others. The encounter lasted approximately thirty to forty-five seconds.

Tonya called the police and drove to her residence. When the police arrived, she described the man as a Hispanic male, twenty-five to thirty years old, stocky build, five foot five inches to five foot nine inches tall, with a birthmark or mole on his face by his right eye. She also described him as wearing a white baseball cap, white shirt, a blue jacket, and jeans. She described the handgun as a black semi-automatic that looked very real.

Based on a description of the vehicle being driven, the police developed a suspect in the robbery. On March 14th, Tonya went to the Amarillo Police Department to view a photo lineup of six individuals. She identified Appellant as the man who attempted to rob her on March 9th.

2

Appellant was subsequently charged by indictment with the offense of aggravated robbery. The indictment alleged that he "did then and there, while in the course of committing theft of property and with the intent to obtain and maintain control of the property, intentionally or knowingly threaten or place Tanya Brown in fear of imminent bodily injury or death and the defendant did use or exhibit a deadly weapon namely, a handgun."[3] Prior to trial, Appellant filed a *Motion to Suppress Photographic Identification*, wherein he sought to prohibit the in-court identification of Appellant by any witness who had previously been shown the photo lineup. Appellant contended the lineup was impermissibly suggestive. Specifically, he contended his photograph was "the only one in which a person with a mole or birthmark on their face was depicted." The motion was not ruled on prior to trial. In lieu thereof, the judge announced that it would be considered during the trial. During trial, the motion was partially granted when the trial court ruled that the photo lineup itself was impermissibly suggestive, but not so suggestive as to taint the reliability of Tonya's in-court identification of Appellant. Accordingly, the State was prohibited from offering evidence of the lineup, but Tonya was permitted to testify concerning her identification of Appellant as the man who attempted to rob her. In particular, Tonya testified that her in-court identification of Appellant was based upon her up-close, face-to-face encounter with Appellant. During the punishment phase of his trial, Appellant testified he attempted to rob a person in the vehicle in front of him at the Sonic restaurant while using a deadly weapon.[4]

---

[3] The record reflects two different spellings of the victim's name.

[4] The Texas Court of Criminal Appeals has overruled "any last vestiges of the *De Garmo* doctrine," making it clear that an appellant does not forfeit his right to complain on appeal about errors occurring during the guilt-innocence phase of a trial by admitting guilt during the punishment phase of trial. *Jacobson v. State*, 398 S.W.3d 195, 196 (Tex. Crim. App. 2013).

The in-court identification of an accused is "inadmissible when it has been tainted by an impermissibly-suggestive pretrial photographic identification." *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). This does not mean, however, that a court must automatically exclude an in-court identification that follows an unnecessarily suggestive photo lineup. "It is the 'substantial likelihood of misidentification' that may be engendered by [the prior] suggestive procedure that works the deprivation of due process." *Tijerina v. State*, 334 S.W.3d 825, 836 (Tex. App.—Amarillo 2011, pet. ref'd) (quoting *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988)). "The test is whether, considering the totality of the circumstances, 'the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Ibarra,* 11 S.W.3d at 195 (quoting *Simmons v. United States,* 377 U.S. 377, 384, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968)).

In determining the substantial likelihood of misidentification an appellate court should consider five non-exclusive factors: (1) the opportunity of the witness to view the accused at the time of the offense; (2) the degree of attention the witness paid during the encounter; (3) the accuracy of the prior description of the accused given by the witness; (4) the level of certainty demonstrated by the witness at the time of confrontation; and (5) the length of time between the offense and the confrontation. *Neil v. Biggers,* 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L.Ed. 2d 401 (1972).

Whether the trial court erred in admitting the in-court identification of the accused involves mixed questions of law and fact. *Loserth v. State*, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998). Accordingly, while an appellate court should give great deference to

4

the trial court's determination of the historical facts, the question of whether those facts render the identification unreliable is a matter which should be reviewed *de novo. Tijerina,* 334 S.W.3d at 837.

Assuming, *arguendo,* that the trial court was correct in its determination that the photo-lineup was impermissibly suggestive, we must still determine whether, under the totality of the circumstances, Tonya's in-court identification testimony was reliable, i.e., whether there was no substantial likelihood of irreparable misidentification.

Considering the first two *Biggers* factors, the opportunity of the witness to view the accused at the time of the offense and the degree of attention the witness paid during the encounter, while viewing the historical facts in the light most favorable to the trial court's ruling, Tonya Brown had the opportunity to view the person accosting her for thirty to forty-five seconds, at extremely close range, while engaging in a back and forth conversation. She had an unobstructed view of his facial features, under adequate lighting from the Sonic restaurant, and under circumstances of heightened attention. Accordingly, these factors weigh in favor of a reliable in-court identification.

As to the third *Biggers* factor, the accuracy of the prior description of the accused given by the witness, we note that while Tonya's description was not 100 percent accurate, it was substantially accurate. She recalled specific facial features, including his eyes, a small face, little nose, and a birthmark or mole on the right-hand side of his eye. She described the assailant as a light-skinned Hispanic male, approximately five foot five inches to five foot nine inches in height, twenty-five to thirty years old, clean shaven with a stocky build, wearing a white baseball cap, white shirt, dark blue jacket and jeans. While the evidence shows that Appellant does not have a mark on the right

side of his face, but instead has one on the left side, this discrepancy is not fatal to the accuracy of Tonya's identification. Overall, the third *Biggers* factor weighs in favor of reliability.

The level of certainty demonstrated by Tonya at the time of her in-court identification, the fourth *Biggers* factor, also weighs in favor of a finding that her identification was accurate and reliable. Tonya never equivocated concerning her in-court identification, testifying specifically that her identification was based upon what she observed the night of the robbery. Her identification of Appellant as the man who accosted her was consistent and positive, even in the face of zealous cross-examination. Finally, as to the fifth *Biggers* factor, the length of time between the offense and the confrontation, Tonya's in-court identification was less than six months after the robbery—hardly an amount of time that would call into question the reliability of her testimony.

Weighing the five *Biggers* factors and considering the in-court identification under the totality of the circumstances, the record does not show that the identification of Appellant was irreparably tainted by an impermissibly suggestive photo array. The historical facts do not give rise to a substantial likelihood of misidentification and the indicia of reliability clearly outweigh the corrupting effect, if any, allegedly arising from the out-of-court identification procedure. Appellant's first issue is overruled.

ISSUE TWO—SUFFICIENCY OF THE EVIDENCE

We review challenges to the sufficiency of the evidence under the standards discussed in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)

6

and *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We refer the parties to those cases.

According to the indictment in this case, in order to obtain a conviction, the State was required to show that, while in the course of committing theft of property and with the intent to maintain control of the property, Appellant intentionally or knowingly threatened or placed Tonya Brown in fear of imminent bodily injury or death and did use or exhibit a deadly weapon, namely, a handgun. TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011). Tonya testified that during the robbery Appellant brandished a heavy metal semi-automatic black handgun and that he pressed it against her shoulder. Further testimony was given that the handgun used was similar to a Glock 9mm pistol and that Appellant "racked the slide" on the weapon as if to load a round into the firing chamber. A police witness testified that a handgun is a firearm and a deadly weapon. Viewing this evidence in the light most favorable to the verdict, we find that a reasonable juror could have found the essential elements of the offense charged beyond a reasonable doubt. Specifically, we find a reasonable juror could have found that Appellant used or exhibited a deadly weapon in the course of committing robbery. Appellant's second issue is overruled.

CONCLUSION

The judgment of the trial court is affirmed.

Patrick A. Pirtle
Justice

Do not publish.

7