ACCEPTED
07-15-00112-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
9/16/2015 5:48:52 PM
Vivian Long, Clerk

# IN THE COURT OF APPEALS
# FOR THE SEVENTH DISTRICT OF TEXAS
# AT AMARILLO

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

9/16/2015 5:48:52 PM

VIVIAN LONG
CLERK

## NO.  07-15-00112-CR

---

## DANIEL ORES PULVER
## Appellant
## V.
## THE STATE OF TEXAS
## Appellee

---

## APPEAL FROM THE 222ND JUDICIAL DISTRICT COURT
## OLDHAM COUNTY, TEXAS

---

## BRIEF OF APPELLANT
## CRIMINAL APPEAL

---

**W. BROOKS BARFIELD JR.**
**ATTORNEY AT LAW**
**P.O. BOX 308**
**AMARILLO, TX. 79105**
**barfieldlawfirm@gmail.com**
**806.468.9500**
**806.468.9588 Fax**
**SBN 00783597**
**APPELLANT'S COUNSEL**

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Tex. R. App. P. 38.1 (a), I hereby certify that the following individuals have an interest in this case. I make these representations in order that the members of this Court may evaluate possible disqualifications or recusal.

*Trial Judge*:

Hon. Roland D. Saul
235 E. 3rd Street Rm.305
Hereford, TX 79045

*State's Attorney*:

Kent Birdsong
P.O. Box 698
Vega, TX 79092

*Appellant*:

Daniel Ores Pulver
TDC#1985728
Polunsky Unit
3872 FM3505
Livingston, TX 77351

*Trial Counsel*:

Bryan David Denham
P.O. Box 981
Pampa, TX 79066

*Appellate Counsel*:

W. Brooks Barfield Jr.
P.O. Box 308
Amarillo, TX 79105

# TABLE OF CONTENTS

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     2

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     3

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     4,5

Issues Presented for Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

Issue One: <u>The trial Court abused its discretion in denying Appellant's Motion To Supress Evidence based on the length of the traffic detention</u>

Issue Two: <u>The trial court erred when it allowed testimony of Appellant's prior criminal record during the guilt innocence portion of the trial</u>

Issue Three: <u>Appellant was indigent and should not have to pay court appointed attorney's fees</u>

Statement of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     6

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     7

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     18

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     26

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     27

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     27

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     27

## TABLE OF AUTHORITIES

### SUPREME COURT CASES

*Terry v. Ohio*, 392 U.S. 1, 21-22 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . .     20

### TEXAS CASES

*Carmouche v. State*, 10 S.W. 3d 323, 327 (Tex. Crim. App. 2000) . . . . . . . .     18

*Amador v. State*, 221 S.W.3d 666, 673. (Tex. Crim. App. 2007) . . . . . . . . . .   18,19

*St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) . . . . . . . .     18

*Romero v. State*, 800 S.W. 2d 539, 543 (Tex. Crim. App. 1980) . . . . . . . . . .     18

*Wiede v. State*, 214 S.W, 3d 17, 24 (Tex. Crim. App. 2007) . . . . . . . . . . . . .     19

*State v. Kelley*, 204 S.W. 3d 808, 818-19 (Tex. Crim. App. 2006). . . . . . . . .     19

*State v. Stevens*, 235 S.W. 3d 736, 740 (Tex. Crim. App. 2007). . . . . . . . . .     19

*Walter v. State*, 28 S.W. 3d 538, 542 (Tex. Crim. App. 2000). . . . . . . . . . . .     19

*Matthews v. State*, 431 S.W. 3d 596, 603 (Tex. Crim. App. 2014) . . . . . . . . .     19

*Davis v. State*, 947 S.W. 2d 240, 244-45 (Tex. Crim. App. 1997) . . . . . . . . . .     19

*Strauss v. State*, 121 S.W. 3d 486, 490 (Tex. App. –Amarillo 2003, pet. ref')   19,20

*Ford v. State*, 158 S.W. 3d 488, 492 (Tex. Crim. App. 2005). . . . . . . . . . . . .     20

*Davis v. State*, 61 S.W. 3d 94, 97 (Tex. App. Amarillo 2001). . . . . . . . . . . . .     23

*Tijerina v. State*, 334 S.W. 3d 825, 835 (Tex. App. Amarillo 2011, pet ref'd).     24

*Downer v. Aquamarine Operations Inc*, 701 S.W. 2d 238, 241-42

(Tex. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     24

*Guzman v. State*, 955 S.W. 2d 85, 89 (Tex. Crim. App. 1997). . . . . . . . . . . .     24

*Gigliobianco v. State*, 210 S.W. 3d 637, 641-642 (Tex. Crim. App. 2006). . .     25

*Mayer v. State*, 274 S.W. 3d 898, 901 (Tex. App. Amarillo 2008) . . . . . . . . .   27

*aff'd*, 309 S.W. 3d 552 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . . . . . . .   27

*Barrera v. State*, 291 S.W. 3d 515, 518. (Tex. App. Amarillo 2009, no pet.)

(per curiam). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

## STATUTES AND RULES

*Texas Transportation Code Section 545.352* . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Article 38.23 Texas Rule Criminal Procedure* . . . . . . . . . . . . . . . . . . . . . . . .   21

*Texas Rule of Appellate Procedure 44.2(a)* . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Texas Rule of Evidence 403* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

*Tex. Code Criminal Procedure Art. 26.04(p)* . . . . . . . . . . . . . . . . . . . . . . . .   27

*Texas Code of Criminal Procedure Art. 26.05(g)*. . . . . . . . . . . . . . . . . . . . . .   27

## U.S. CONSTITUTION AMENDMENTS

Fourth Amendment United States Constitution . . . . . . . . . . . . . . . . . . . . . . . .   20,23

## TEXAS CONSTITUTION

Article 1 Section 10 of the Texas Constitution . . . . . . . . . . . . . . . . . . . . . .   21

## ISSUES PRESENTED FOR APPEAL

Issue One: <u>The trial Court abused its discretion in denying Appellant's Motion To Suppress Evidence based on the length of the traffic detention</u>.

Issue Two: <u>The trial court erred when it allowed testimony of Appellant's prior criminal record during the guilt innocence portion of the trial</u>.

Issue Three: <u>Appellant was indigent and should not have to pay court appointed attorney's fees</u>.

## STATEMENT OF THE CASE

Appellant was indicted for possession of a controlled substance, heroin, in amount of 400 grams or more enhanced. CR vol.1 pg.6-7. Appellant was appointed counsel as indicated by counsel's pay sheet. CR vol.1 pg.98. The trial court conducted a suppression hearing wherein the trial court denied defense's motion to suppress evidence based on the length of the traffic stop detention.CR vol.1 pg.9-11. RR vol.2 pg.63. A jury trial was held and Appellant was found guilty and sentenced to 70 years in prison and fined $70,000.00 by the jury. CR vol.1 pg. RR vol.5 pg.155; vol.6 pg. 67. Findings of Facts and Conclusions of law were filed on January 18, 2015. CR vol.1 pg.52-53. The bill of costs reflects that appellant was charged appointed attorney's fees of $2397.00. CR pg.101.

## STATEMENT OF FACTS

SUPPRESSION HEARING

Testimony Paul Weller

DPS Trooper Weller testified his duties were traffic enforcement and drug interdiction on Interstate 40, U.S. 385 and any road in Oldham County. RR vol.2 pg.6. He testified he had been involved in about 12 to 15 drug stops. In 2012 Trooper Weller stopped Appellant for traveling 78 miles per hour in a 75 mile per hour zone around the 29 mile marker on Interstate 40 in Oldham County. Trooper Weller initially observed a Chevrolet Malibu headed eastbound and confirmed the speed with radar. RR vol.2 pg.7-8,128.

When Trooper Weller approached the vehicle he asked appellant for his driver's license and rental agreement. Trooper Weller advised appellant he was going to give him a warning and appellant went back to the patrol car and sat in the passenger seat. Trooper Weller noticed Appellant had a limp and Appellant advised that he had an artificial limb. RR viol.2 pg.9.

The trooper described appellant as nervous with shallow breathing and avoiding eye contact. Trooper Weller testified appellant was not sure how to answer some of the trooper's questions. Appellant advised the trooper initially he was headed to an Elton John concert in Chicago. RR vol.2 pg.10. Trooper Weller checked on line with his phone and discovered Elton John was not playing a concert

in Chicago that weekend. RR vol.2 pg.11.

The trooper asked appellant whether his driver's license had ever been suspended and if appellant had ever been arrested. Appellant advised his license was suspended 10 years ago. The trooper's computer did not show a license suspension but it showed appellant had a significant criminal history, including possession charges. RR vol.2 pg.12-13. The trooper testified he believed appellant misrepresented his criminal history to him because appellant only advised the trooper of two previous convictions. The Trooper testified after prompting from the prosecutor that the vehicle had a lived in look and that was an indicator in drug interdiction. The trooper also testified that both his patrol vehicle and family vehicle have a lived in look so he didn't feel that fact was important enough to include in his report. RR vol.2 pg.13-15,36.

Trooper Weller testified there was a passenger in the vehicle named Brandi Lynn Grammer. She also told the trooper they were going to Chicago to see an Elton John Concert. Ms. Grammer indicated she did not even know what State they were in and that they stayed somewhere in California and that they were going to the coast. The trooper could not remember exactly what she said as to where she lived. The trooper then went back to talk to appellant. Appellant told the trooper that they were coming from Jerome Idaho that they had considered going to the coast but it was too far. Appellant advised that they came through Las Vegas. RR vol.2 pg.15-

16.

Appellant told the trooper that they had stayed at the Royal Inn in Riverside or Chino. That did not make sense to the trooper because that location was only 50 minutes from the coast. At that point Trooper Weller asked if there was anything illegal in the vehicle, including marijuana, cocaine, methamphetamine, large amounts of cash, or prohibited weapons. Appellant responded no to all. RR vol.2 pg.17-19. Trooper Weller asked appellant if he could search the vehicle. Appellant asked the trooper why he wanted to search the vehicle. Trooper Weller advised that he believed there was illegal contraband in the vehicle. RR vol.2 pg.19.

Appellant advised the trooper that he was kind of in a hurry. Trooper Weller advised he was going to call the canine unit. Trooper Weller made the stop at 5:17 RR vol.2 pg.20. Trooper Weller was not sure what time he asked for consent to search the first time but believed it was 11 minutes in to the stop and the dog was called within 12 minutes. However, no dog was available from either DPS. RR vol.2 pg.21. There were also no dogs available in Oldham County or Deaf Smith County. RR vol.2 pg.23. A dog from Randall County finally arrived at approximately 6:10 p.m. but the trooper was not sure of the time. RR vol.2 pg.24.

Once the dog got there the Trooper testified he observed the dog alert to the vehicle. A search was then conducted. RR vol.2 pg.25. The trooper found four bundles of heroin in the rear door panel on the passenger side of the vehicle. RR

vol.2 pg.26. State's Exhibits 1-9, photographs of the scene were admitted. RR vol.2 pg.27. The trooper stated that the reason he asked to search the vehicle was based on appellant's misrepresentation of his criminal history, the reason for the trip to see Elton John in Chicago when he was not even having a concert in Chicago were determining factors for the trooper. RR vol.2 pg.27. In addition the coast story, and the travel route described was also a factor in his decision. RR vol.2 pg.28.

The trooper's synopsis in his report for the stop was the route of the trip, appellant was nervous, and appellant's criminal history. RR vol.2 pg.29. Trooper Weller testified that the statements of Ms. Grammer and appellant were consistent with one another. RR vol.2 pg.30-3,40-41. The trooper testified that someone would be nervous just talking with a police officer. RR vol.2 pg.33. The trooper testified that there were times when he searched a vehicle based on his suspicion and no drugs were found. RR vol.2 pg.34.

Testimony Brandon Riefers

Trooper Riefers testified on March 22, 2012, he was involved with a stop with Trooper Weller. Trooper Riefers did not write a report on the incident and testified he only remembered bits and pieces of the incident. Trooper Riefers found the contraband in the rear passenger side door panel. RR vol.2 pg.43-44. Trooper Weller told Trooper Riefers that he found a star bit in the trunk by the spare tire. Trooper Riefers testified that tool should not be in a rent car unless somebody put it there for

a reason. So he started looking for where it would fit in the rental car. Trooper Riefers pushed the grommet in on the rear door, looked in the door and saw the foil bundles. RR vol.2 pg.45. Trooper Riefers noticed the screw in rear door had been tooled and then the door panel was removed. The amount they found was 6.3 pounds of heroin according to the lab report. RR vol.2 pg.46.

Brandi Grammer

Ms. Grammer testified that Mr. Pulver was her boyfriend. She recalled when they were pulled over. RR vol.2 pg.49. She testified they were headed to Chicago Illinois to see an Elton John concert as a gift. They were coming from Jerome Idaho via Los Angeles. RR vol.2 pg.50. The reason for going through Los Angeles was because it was a scenic route. When they were pulled over Ms. Grammer was asleep. When she spoke to the trooper she told him they were going to see Elton John. RR vol.2 pg.51. Ms. Grammer testified she had known appellant for seven years and he did not appear to be nervous during the stop. Ms. Grammer testified that neither she nor appellant gave consent to search the vehicle. RR vol.2 pg.52-53,56.

The trial court denied defense's motion to suppress base on the totality of the circumstances and on the fact that the defendant gave consent to search the vehicle after he initially refused. RR vol.2 pg.63; CR vol.1 pg.52-53.

JURY TRIAL

Paul Weller Testimony

On March 22, 2012, Trooper Weller stopped appellant, who was driving a silver rental car from Washington State, for speeding in Oldham County. The trooper testified the vehicle was traveling 78 in a 75 mile per hour zone. RR vol.4 pg.79-80,102. Trooper Weller testified he did not observe anything unusual about appellant's demeanor. RR vol.4 pg.81. He asked appellant to have a seat in the patrol car which he did. RR vol.4 pg.81.

Trooper Weller asked appellant where he and the passenger in the vehicle were going. Appellant informed the Trooper they were traveling from Jerome Idaho to a concert in Chicago. RR vol.4, pg. 126. Trooper Weller noticed a difference between what appellant told him about appellant's criminal history and what he found on the computer search. RR vol.4 pg.83. In addition the Trooper testified he did an internet search and saw that Elton John was not going to be in Chicago that weekend. RR vol.4 pg.87. The passenger, Ms. Grammer, confirmed they were going to an Elton John concert and that they had been out in California. RR vol.4 pg.88,126. Trooper Weller testified that appellant and Ms. Grammer's statements corroborated one another. RR vol.4 pg.126.

Trooper Weller testified appellant advised that they had traveled to Chino or El Reno. RR vol.2 pg.89. The trooper testified that he became suspicious based

upon the manner in which appellant answered his questions, appellant was avoiding eye contact and appellant's shallow rapid breathing. The trooper testified that those were indicators for criminal activity. In addition, although the trooper didn't put it in his report nor did the trooper use it as an indicator of criminal activity the vehicle had a lived in look. RR vol.4 pg.90.

Trooper Weller asked for consent to search the vehicle and whether appellant had anything illegal in the vehicle. Appellant denied there was any contraband in the vehicle. RR vol.4 pg.91. When asked for consent to search, according to the trooper, aappellant avoided the question, but inquired of Trooper Weller why he wanted to search the vehicle. Trooper Weller advised because he believed that there was contraband in the vehicle. Appellant advised he was in a hurry and he would prefer that the trooper not search the vehicle. At that point the trooper called a canine unit, and at that point appellant consented to the search. Trooper Weller testified it was his policy that once there was a refusal that he considered that a refusal for all purposes. RR vol.4 pg.92-93.

A canine arrived from Randall County which was approximately 45 miles away. The trooper was not sure how long it took for the dog to arrive at the scene. RR vol.4 pg.94.

Deputy Riley, the Canine officer, conducted the search and the dog got a positive hit for the smell of narcotics. The dog started scratching at the car which

gave the trooper probable cause to search the vehicle. Trooper Weller's search lasted approximately 15 minutes. Trooper Riefers assisted with the search. Trooper Weller during the search found a set of star bits and a ratchet in the trunk in the spare tire well which the trooper believed would not be consistent with being in a rental vehicle. RR vol.4 pg.95, 119. The trooper started looking in the vehicle to detect any areas in the interior of the vehicle that may have been tooled or messed with. Trooper Riefers actually noticed a door panel could have been taken off. He removed a rubber grommet and shined his flashlight inside the door panel and saw aluminum foil. The troopers placed appellant and Ms. Grammer under arrest. Then the trooper took off the door panel of the passenger rear door. Inside were four bundles of contraband which contained white powder which weighed 6.3 pounds. RR vol.4 pg.96, 108.

They field tested the substance the next day and the field test turned blue indicating contraband. RR vol.4 pg.97. State's Exhibits 1-3 and 6-11, photographs of the scene and evidence seized were admitted. RR vol.4 pg.100.

Appellant never admitted to having knowledge of the contraband. RR vol.4 pg.104. State's Exhibit 4, a map of the United States was admitted. RR vol.4 pg.106.

The trooper used a blue marker on the map to indicate the route as described by appellant. RR vol.4 pg.106-107. State's Exhibit 12 the DVD of the stop was admitted in evidence. RR vol.4 pg.113. When appellant was asked to provide a rental

agreement and his license he complied and there was nothing unusual about either document. Appellant cooperated with the stop. RR vol.4 pg.116.

Scott Riley Testimony

Deputy Riley testified he worked for the Randall County Sheriff as a canine officer. He attended 80 hours of training to be a canine officer. RR vol.5 pg.13-14. His canine was named Luno. RR vol.5 pg.15. Deputy Riley described the canine training in detail. RR vol.5 pg. Deputy Riley testified that Luno was certified by the National Narcotic Dog Detection Association and the National Police Canine Association. RR vol.5 pg.16. State's Exhibits 24, 25 and 26 the canine certification documents were admitted in evidence. RR vol.5 pg.18.

On March 22, 2012, Deputy Riley came to Oldham County with Luno from the Randall County Sheriff's Office to mile marker 29 in Oldham County a distance of 46 miles. RR vol.5 pg.20. He arrived on scene at 6:12. RR vol5 pg.21. Deputy Riley testified that if Luno alerts he will notice the dog's breathing gets more rapid and a change in its body posture. When Luno has an aggressive alert he will scratch and a passive alert he sits. RR vol.5 pg.23. For the incident in question Luno scratched. RR vol.5 pg.24.

The dog alerted on the driver's passenger side first and then it alerted again on the passenger rear door. RR vol.5 pg.26. Once the dog alerted he advised Trooper Weller and appellant. At that point Deputy Riley stood back while the troopers

conducted the search. RR vol.5 pg.27.

Deputy Riley testified that Luno missed narcotics but he did not know the rate. RR vol.5 pg.29. Deputy Riley testified that the probable cause for the search was the alert. RR vol.5 pg.34.

Testimony Brandon Riefers

On March 22, 2012, Trooper Riefers assisted Trooper Weller in searching the vehicle appellant was driving. He testified that he observed the bit tool found in the trunk of the vehicle. He testified that in his experience that often times drugs are hidden in door panels in vehicles. Trooper Riefers explained how he found the contraband. Trooper Riefers identified State's Exhibit 29 as being a photograph of the star bit tool. RR vol.5 pg.38-39. That tool was used to open the door panel. RR vol.5 pg40. State's 14, photo of appellant on the day of the arrest was admitted. Trooper Riefers did not know how long his average traffic stop lasts. RR vol.5 pg45. Trooper testified that the street value for the drugs as being $757,472.34. RR vol.5 pg.137.

Marjorie Robison Testimony

Ms. Robison testified that she was a chemist for the Texas Department of Public Safety as a forensic scientist. RR vol.5 pg.51. She testified she tested the evidence contained in State's Exhibit 28. The tests revealed the contents were heroine in the amount of 2.67 Kilograms or 5.85 pounds which included the

adulterants and dilutants. The Lab report prepared by Ms. Robison was admitted as States Exhibit 23. RR vol.5 pg.55-58, 60-62,105.

Brian Frick Testimony

Investigator Frick testified he worked for the Texas Department of Public Safety. RR vol.5 pg.109. On March 22, 2012, he interviewed appellant in Oldham County over the telephone. RR vol.5 pg.113. He and D.E.A. Agent Carlos Perez then interviewed appellant in person in Oldham County on March 23, 2012 for about 45 minutes. Appellant was Mirandized and did not ask for an attorney. RR vol.5 pg.114-115,119. Appellant advised Investigator Frick that he was coming from Los Angeles California from Jerome Idaho. RR vol.5pg.117-118. Appellant related to the investigators that he had gone to a hotel in Indio California that he was going to be paid $1500.00 to transport 2,670 grams of heroin. RR vol.5 pg.121. Appellant had advised that he had made a previous trip to Chicago in the same rental car on the same route making a dry run. RR vol.5 pg.122-124. In addition to the $1500.00, he was also given front money of $800.00 for travel expenses. RR vol.5 pg.125. Appellant obtained the drugs in Indio and then headed for California. RR vol.5 pg.125. The recording of the interview was admitted as State's Exhibit 19. RR vol.5 pg.126.

The jury found appellant guilty. RR vol.5 pg.155. Appellant plead true to the enhancement paragraph in the indictment. RR vol.6 pg.6. State's Exhibit 20,

Appellant s judgment made the basis of the enhancement in the indictment was admitted in evidence. The jury sentenced Appellant to 70 years in prison and a fine of $70,000.00. RR vol.6 pg.67.

## ARGUMENT

In his first point of error appellant contends the trial Court abused its discretion in denying Appellant's motion to suppress evidence based on the duration of the traffic stop.

In his second point of error appellant contends the trial court erred in overruling defense counsel's objection to evidence of appellant's prior criminal conduct during the guilt innocence portion of the trial.

In his third point of error appellant asserts he was indigent throughout the trial and should not be accessed court appointed attorney's fees.

**ISSUE ONE: STANDARD OF REVIEW MOTION TO SUPPRESS**

An appellate Court reviews a trial court's ruling on a motion to suppress evidence for an abuse of discretion standard. *Carmouche v. State*, 10 S.W. 3d 323, 327 (Tex. Crim. App. 2000). The appellate Court uses a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673. (Tex. Crim. App. 2007). The appellate Court does not engage in its own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007), *Romero v. State*, 800 S.W. 2d 539, 543

(Tex. Crim. App. 1980). The appellate Court gives almost total deference to the trial court's rulings on (1) questions of historical fact, especially when based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Armador*, 221 S.W. 3d at 673. Appellate Courts review de novo "mixed question of law and fact" that do not depend upon credibility or demeanor. *Id*.

An appellate court must review the evidence in a light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W, 3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelley*, 204 S.W. 3d 808, 818-19 (Tex. Crim. App. 2006). An appellate Court may uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W. 3d 736, 740 (Tex. Crim. App. 2007).

A police office may lawfully stop a vehicle and briefly detain its occupants for investigative purposes if, under the totality of the circumstances, the officer has a reasonable suspicion, supported by articulable facts, that a traffic offense has occurred. See *Walter v. State*, 28 S.W. 3d 538, 542 (Tex. Crim. App. 2000). In such a circumstances the detention must be no longer than is reasonably necessary to effectuate the purpose of the traffic stop. *Matthews v. State*, 431 S.W. 3d 596, 603 (Tex. Crim. App. 2014); *Davis v. State*, 947 S.W. 2d 240, 244-45 (Tex. Crim. App. 1997); *Strauss v. State*, 121 S.W. 3d 486, 490 (Tex. App. –Amarillo 2003, pet.

ref'd). As part of the traffic stop, the officer may require the detainee to identify himself, produce a driver's license, and provide proof of insurance. *Id*. The officer may also inquire of the driver and passengers about their destination and the purpose of their trip. *Id*. The officer may also check for outstanding warrants for the detainees and once the purpose for the stop has been effectuated, request for voluntary consent to search the vehicle or continue the detention. *Id* At that point, the detention may be involuntarily extended only if the officer has a reasonable suspicion, again sufficiently supported by articulable facts that the detainee has been, or soon will be engaged in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Ford v. State*, 158 S.W. 3d 488, 492 (Tex. Crim. App. 2005).

APPLICATION OF LAW TO FACTS

In the present case the trial court in denying appellant's motion to suppress found that the totality of the circumstances justified an involuntary detention. RR vol.2 pg.63. CR vol.1 pg.52-53.

Trooper Weller testified he stopped Appellant's vehicle for traveling 78 miles per hour in a 75 mile per hour zone. Appellant does not argue the legality of the initial traffic stop. See *Texas Transportation Code Section 545.352.*

There is no dispute in this case that the seizure was a warrantless seizure. Appellant contends that Trooper Weller violated his constitutional rights pursuant to the Fourth Amendment United States Constitution, under Article 1 Section 10

Texas Constitution, and Texas Rule Criminal Procedure Article 38.23. "No evidence obtained by an officer or other person in violation of the provisions of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." *Tex. Code Crim. Proc. §38.23.*

Appellant contends that the evidence in the case demonstrates Appellant was cooperative during the traffic stop. Appellant provided a valid driver's license, and valid rental agreement when requested. He cooperated with the stop and answered Trooper Wellers questions regarding the destination of the trip and purpose of the trip. Appellant told Trooper Weller they were headed to Chicago to see a concert, and that they had traveled from Jerome Idaho to Los Angeles and were then headed to Chicago. This was entirely and completely confirmed by Ms. Grammer whom was left in the alone while appellant was in the patrol vehicle. Trooper Weller did not receive conflicting stories from the detainee's regarding the purpose or their destination.

There was no indication of any other criminal activity in this case. The rental agreement confirmed Appellant did not own the vehicle and the vehicle was rented. The contraband was found inside the vehicle's rear passenger door totally inaccessible to the occupants of the vehicle. The star bit device was not observed during the initial detention to raise suspicion that any contraband was hidden in the vehicle. Trooper Weller did not observe any obvious altercations to the vehicle

during the initial detention to raise suspicion contraband was being transported.

The trooper did not smell any scent such as marijuana, alcohol or other chemicals emitting from the vehicle to raise suspicion of criminal activity. The trooper did not observe any drugs or drug paraphernalia in the vehicle or on the person of either detainee. No evidence was present during the stop Appellant was driving impaired by the use of alcohol or drugs.

Trooper Weller found it totally reasonable that the vehicle had a lived in look as the detainees were going on a long trip and the trooper's vehicles themselves normally had a lived in look. Further, neither detainee had outstanding warrants to require further detention. Ms. Grammer testified at the suppression hearing that appellant was not acting nervous and that she had known him for seven years. In addition, Trooper Weller at the suppression hearing testified that it would be perfectly reasonable for someone with a criminal history, as appellant had, to be nervous when detained by law enforcement. Appellant denied that there was any contraband in the vehicle, nor did Ms. Grammer do anything to indicate criminal activity was afoot.

Appellant gave a very appropriate response by asking why the trooper wanted to search the vehicle and appellant gave a reasonable answer that he was in a hurry to get to Chicago when asked for consent to search. Instead of acknowledging appellant's answers and writing a warning or citation for speeding

Trooper Weller continued to press appellant to search the vehicle while appellant was still in the patrol vehicle and threatened further detention with a canine search. Holding appellant in the patrol vehicle for almost another thirty minutes while a canine unit arrived. Appellant contends at that point is when the detention became an unconstitutional illegal detention.

Appellant contends when viewed under the totality of the circumstances the evidence unequivocally proves there was no reasonable articulable basis for Trooper Weller to involuntarily detain appellant other than to issue the original warning that he advised appellant he was going to issue originally. Appellant's conviction should be reversed.

HARM ANALYSIS

Appellate asserts that he was harmed because of the fact that the illegally obtained evidence was admitted in to evidence. *Davis v. State*, 61 S.W. 3d 94, 97 (Tex. App. Amarillo 2001). An appellate court reviews the harm from a trial court's erroneous denial of a motion to suppress and subsequent admission of the evidence obtained in violation of the United States Constitution Fourth Amendment under the constitutional standard of Texas Rule of Appellate Procedure 44.2(a). The evaluation by the appellate Court of the entire record is then made "in a neutral, impartial, and even handed manner, not in the light most favorable to the prosecution." Unless the appellate court determines "beyond a reasonable doubt that

the error did not contribute to appellant's conviction or punishment" the Court "must reverse a judgment of conviction and remand for a new trial." *Tijerina v. State*, 334 S.W. 3d 825, 835 (Tex. App. Amarillo 2011, pet ref'd).

In the present case appellant contends that there was a reasonable probability the erroneous introduction of the heroin found inside the door compartment of the rental car certainly resulted in not only in his conviction but in the 70 years prison sentence and $70,000.00 fine handed out by the jury. *Id.* Because of the trial court's error, appellant contends his conviction should be reversed and or remanded for new trial on the merits without the introduction of the illegally obtained evidence.

**ISSUE TWO: TEXAS RULE OF EVIDENCE 403**

STANDARD OF REVIEW

In the present case appellant asserts the trial court arbitrarily and/or unreasonably overruled defense counsel's Rule 403 objection as to appellant's prior criminal record during the guilt innocence portion of the trial. Appellant contends the trial court abused its discretion and said ruling did not conform to the guiding rules and principals of law. See *Downer v. Aquamarine Operations Inc*, 701 S.W. 2d 238, 241-42 (Tex. 1985). The abuse of discretion standard applies to evidentiary rulings. *Guzman v. State*, 955 S.W. 2d 85, 89 (Tex. Crim. App. 1997).

Texas Rule of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

Appellant contends the trial court did not conduct the proper legal analysis when it made its ruling. The trial court when faced with a Rule 403 objection "must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponents need for that evidence against (3) any tendency of the evidence to suggest decision on improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood the presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted." *Gigliobianco v. State*, 210 S.W. 3d 637, 641-642 (Tex. Crim. App. 2006).

APPLICATION TO PRESENT CASE

Defense counsel objected to the Testimony of Trooper Weller testifying about appellant's prior criminal record under Rule 403 Texas Rules of Evidence. Trooper Weller testified:

> A: When I ran the criminal history, he informed me that he had been arrested for DUI and an assault or battery, but there was some other drug arrests that—he did not mention.

> Mr. Denham: Objection, Your Honor. It's prejudicial, Your Honor. it has no materiality as to the charge today, Your Honor.

> The Court: Well, that's overruled. I think he has explained that.

RR vol.4 pg.83.

In the present case the record clearly demonstrates the trial court did not conduct a Rule 403 balancing test pertaining to the highly prejudicial evidence that appellant had several prior criminal convictions, including drug convictions. Consequently, the trial court erred and abused its discretion. Appellant's conviction should therefore be reversed.

## ISSUE THREE: APPOINTED ATTORNEY'S FEES

In his third point of error appellant asserts he was indigent throughout the trial and should not be accessed court appointed attorney's fees.

The Clerk's record vol.1 pg.101 reflects that Appellant was apparently charged court appointed attorney's fees in the amount of $2397.00. There appears a handwritten notation on the bill of costs to add the exact amount of the fees claimed by appointed counsel.CR vol.1 p.101. This is not included in the printed and calculated portion of the Bill of Costs. Therefore, out of an abundance of caution and in the event appellant was taxed cost for his fee appellant contends that it was error to charge the attorney fee and that his case should be reversed or the judgment modified.

A trial court has the authority to order reimbursement of the fees of a court-appointed counsel if the court determines that a defendant has the financial resources enabling her/him to offset, in part or whole, the costs of the legal services

provided. *Tex. Code Crim. Proc. Art. 26.05(g)*. *Mayer v. State*, 274 S.W. 3d 898, 901 (Tex. App. Amarillo 2008) *aff'd*, 309 S.W. 3d 552 (Tex. Crim. App. 2010). But "[a] defendant who is determined to be indigent by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." *Tex. Code Crim. Proc. Art. 26.04 (p)*. "The defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Mayer*, 309 S.W. 3d at 556. Accordingly, the record must supply a factual basis supporting a determination the defendant is capable of repaying the attorney's fees levied. *Barrera v. State*, 291 S.W. 3d 515, 518. (Tex. App. Amarillo 2009, no pet.)(per curiam).

In the present case the record shows no evidence that the trial court reconsidered its determination of indecency, the occurrence of a material change of circumstances in appellant's financial circumstances, or his ability to offset the cost of legal services provided. *Tex. Code Crim. Proc. Art. 26.04(p) and Art. 26.05(g)*.

Appellant asserts that his financial condition became worse as the jury accessed a fine of $70,000.00 against appellant. As such appellant contends the attorney's fees should be modified.

## CONCLUSION

Appellant contends the trial Court abused its discretion in denying appellant's motion to suppress evidence based on the duration of the traffic stop in violation of the Fourth Amendment U.S. Constitution, Article I Section 10 Texas Constitution and Article 38.23 Texas Rule Criminal Procedure.

In his second point of error appellant contends the trial court erred in overruling defense counsel's objection to evidence of appellant's prior criminal record during the guilt innocence portion of the trial pursuant to Texas Rule of Evidence 403.

In his third point of error appellant asserts he was indigent throughout the trial and should not be accessed court appointed attorney's fees.

## PRAYER

Appellant prays that his conviction be reversed or reversed and remanded, the Bill of Costs be modified to remove any accessed appointed counsel fees and for any and all other relief the Court deems appropriate.

Respectfully submitted,

/S/ W. Brooks Barfield Jr.

P.O. Box 308
Amarillo, Texas 79105
806.468.9500
806.468.9588 FAX
barfieldlawfirm@gmail.com
**ATTORNEY FOR APPELLANT**

## CERTIFICATE OF COMPLIANCE

I certify that this document brief was prepared with Microsoft Word 7, and that, according to that program's word-count function, the sections covered by TRAP 9.4(i)(1) contain 7,130 words.

/S/ W. Brooks Barfield Jr.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Appellant's brief was delivered to the 222nd District Court of Oldham County, Texas; the Oldham County District Attorney's office, and mailed to Appellant on September 16, 2015.

/S/ W. Brooks Barfield Jr.